# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RELEVANT GROUP, LLC, 1541 WILCOX HOTEL, LLC, 6516 TOMMIE
HOTEL, LLC, and 6421 SELMA WILCOX HOTEL, LLC,

Plaintiffs/Appellants,

v.

STEPHEN "SAEED" NOURMAND, SUNSET LANDMARK INVESTMENT,
LLC, NOURMAND AND ASSOCIATES, and DOES 1-10,

Respondents/Appellees.

On Appeal from the United States District Court
for the Central District of California
No. 2:19-cv-05019-PSG-KS (Hon. Philip S. Gutierrez)

## APPELLANTS' REPLY BRIEF

Jennifer S. Recine
Amit R. Vora
Donald J. Reinhard
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
JRecine@kasowitz.com

*Counsel for Appellants Relevant Group,
LLC, 1541 Wilcox Hotel, LLC, 6516
Tommie Hotel, LLC, and 6421 Selma
Wilcox Hotel, LLC*

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................1

ARGUMENT ..........................................................................................3

THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT TO DEFENDANTS SHOULD BE VACATED............................................................3

I.   This Court Should Reject Defendants' Alternative Bases to Affirm. ..............3

  A.   Sham Litigation May Give Rise to Civil RICO Liability. ...................3

  B.   Relevant Has Adduced Evidence on Enough Predicate Acts. .............9

II.  The District Court Erred by Misapplying the *Noerr-Pennington* Doctrine and Granting Summary Judgment to Defendants on a Flawed Basis. .................13

  A.   The Court Erroneously Declined to Apply the Series Exception to the *Noerr-Pennington* Doctrine................................................13

  B.   Under the Series Exception to *Noerr-Pennington*, Triable Fact Issues Preclude Summary Judgment. ...........................................21

  C.   Even Under the Objectively-Baseless Exception, Summary Judgment Should Have Been Denied..................................................25

III. The District Court Exceeded Its Authority in Sua Sponte Overruling the Court's Prior Summary Judgment Order......................................26

CONCLUSION .......................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988)........................................................................15

*Boulware v. State of Nev., Dep't of Hum. Res.*,
  960 F.2d 793 (9th Cir. 1992) .................................................13, 14

*Boyle v. United States*,
  556 U.S. 938 (2009)..........................................................................8

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008)..........................................................................8

*California Motor Transport Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972)......................................................14, 16, 18, 19

*Castner v. First National Bank of Anchorage*,
  278 F.2d 376 (9th Cir. 1960) ...........................................................27

*City of Columbia v. Omni Outdoor Advertising, Inc.*,
  499 U.S. 365 (1991)....................................................................1, 13

*Deck v. Engineered Laminates*,
  349 F.3d 1253 (10th Cir. 2003) .........................................................4

*Delta Sav. Bank v. United States*,
  265 F.3d 1017 (9th Cir. 2001) .........................................................27

*Giles v. GMAC*,
  494 F.3d 865 (9th Cir. 2007) ...........................................................25

*Glossip v. Gross*,
  576 U.S. 863 (2015).........................................................................28

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989).......................................................................8, 9

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*,
  806 F.3d 162 (3d Cir. 2015) .......................................................15, 20

*Harman v. Valley Nat'l Bank,*
 339 F.2d 564 (9th Cir. 1964) ...............................................................19

*I.S. Joseph Co. v. J. Lauritzen A/S,*
 751 F.2d 265 (8th Cir. 1984) ...............................................................4

*Kim v. Kimm,*
 884 F.3d 98 (2d Cir. 2018) ..............................................................4, 5

*Kottle v. Nw. Kidney Ctrs.,*
 146 F.3d 1056 (9th Cir. 1998) ......................................................15, 16

*McDowell v. Calderon,*
 197 F.3d 1253 (9th Cir. 1999) ...........................................................28

*In re Mersho,*
 6 F.4th 891 (9th Cir. 2021) ................................................................28

*Odom v. Microsoft Corp.,*
 486 F.3d 541 (9th Cir. 2007) ..............................................................8

*Oregon Nat. Res. Council v. Mohla,*
 944 F.2d 531 (9th Cir. 1991) .............................................................15

*Peralta v. Dillard,*
 744 F.3d 1076 (9th Cir. 2014) ..........................................................26

*Pit River Home & Agr. Co-op. Ass'n v. United States,*
 30 F.3d 1088 (9th Cir. 1994) ......................................................26, 27

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.,*
 508 U.S. 49 (1993)................................................................13, 24, 25

*Raney v. Allstate Ins. Co.,*
 370 F.3d 1086 (11th Cir. 2004) ..........................................................4

*Sedima, S.P.R.L. v. Imrex Co.,*
 473 U.S. 479 (1985)...................................................................6, 7, 8

*Snow Ingredients, Inc. v. SnoWizard, Inc.,*
 833 F.3d 512 (5th Cir. 2016) ..............................................................5

iv

*TFWS, Inc. v. Franchot*,
  572 F.3d 186 (4th Cir. 2009) ...............................................................27

*U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chicago, Inc.*,
  953 F.3d 955 (7th Cir. 2020) ........................................................19, 20

*United States v. Boffa*,
  688 F.2d 919 (3d Cir. 1982) .................................................................10

*United States v. Hendrix*,
  673 F. App'x 850 (10th Cir. 2016) ......................................................27

*United States v. Ibrahim*,
  522 F.3d 1003 (9th Cir. 2008) .............................................................12

*United States v. Koziol*,
  993 F.3d 1160 (9th Cir. 2021) ...........................................1, 5, 8, 10, 26

*United States v. Soto-Barraza*,
  947 F.3d 1111 (9th Cir. 2020) .............................................................11

*United States v. Villalobos*,
  748 F.3d 953 (9th Cir. 2014) ........................................................10, 19

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades
  Council*,
  31 F.3d 800 (9th Cir. 1994) ..........................................................13, 24

*Vemco, Inc. v. Camardella*,
  23 F.3d 129 (6th Cir. 1994) ...................................................................4

*Waugh Chapel S., LLC v. United Food & Com. Workers Union Local 27*,
  728 F.3d 354 (4th Cir. 2013) ........................................................15, 20

*Wilkie v. Robbins*,
  551 U.S. 537 (2007)................................................................................6

**Statutes**

18 U.S.C. § 1951 ......................................................................................3

18 U.S.C. § 1962 ..................................................................................6, 7

18 U.S.C. § 1963 ......................................................................................6

18 U.S.C. § 1964 ...................................................................6

28 U.S.C. § 1651 .................................................................28

**INTRODUCTION**

The briefs by Defendants–Appellees Saeed Nourmand, Sunset Landmark Investment LLC, and Nourmand & Associates ("N&A") (together, "Defendants") serve only to reinforce the severity of the district court's error in granting them summary judgment on this record. Indeed, Plaintiffs–Appellants Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC, and 6421 Selma Wilcox Hotel LLC (together, "Relevant") adduced voluminous evidence that Defendants made a series of sham legal filings to delay the Thompson, Tommie, Selma, and Schrader hotel projects. Based on that evidence, a reasonable jury could find that Defendants employed "governmental process" as a "weapon," *see City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991), to "obtain property to which [Defendants] had no lawful claim," *see United States v. Koziol*, 993 F.3d 1160, 1170 (9th Cir. 2021), and that the *Noerr-Pennington* doctrine does not save their extortive litigation activities from liability under the Racketeering Influenced and Corrupt Organizations Act ("RICO"). This Court should reverse.

Tellingly, rather than defending the district court's reasoning, Defendants focus on alternative bases for affirmance. Defendants urge this Court to adopt—contrary to the district court—a categorical rule that litigation activity can never amount to a predicate act under the civil RICO provision. But Defendants misread this Court's decision in *Koziol*, which held that litigation activity *can* amount to

1

extortion under the Hobbs Act. Because it is well settled that any act indictable under the Hobbs Act may constitute a predicate act under the civil RICO provision, *Koziol* militates against Defendants' proffered rule.

Defendants next urge this Court to affirm on the alternative basis that Relevant failed to adduce evidence on a *pattern* of racketeering activity. But that suggestion is contradicted by ample record evidence, which shows that Defendants committed four separate predicate acts—enough for a pattern: extortion regarding the Thompson Hotel; extortion regarding the Tommie Hotel; attempted extortion regarding the Selma Hotel; and attempted extortion regarding the Schrader Hotel.

Ultimately, Defendants offer no meaningful retort to Relevant's showing that granting them summary judgment on *Noerr-Pennington* grounds was exceedingly improper. A rational jury could have found that Defendants filed a series of sham administrative and judicial petitions, without regard to merit, to overwhelm Relevant with legal process, and that Defendants demanded millions of dollars and other costly concessions in exchange for ceasing their tactics. Defendants threatened that they would always "find something else to challenge"; that weaponizing the California Environmental Quality Act ("CEQA") for economic gain was the "drill"; and that it would "take a check" to stop the flurry of legal challenges. A rational jury need only take Defendants at their word to determine that their filings were extortion under RICO and were not shielded by *Noerr-Pennington*.

The district court reached that very conclusion when it denied Defendants' summary judgment motions. Yet the court then changed its mind and *sua sponte* overruled itself. Nothing changed except for the presiding judge—which, of course, is not a legitimate excuse to violate the law of the case. There are only three grounds for doing so: (i) new law; (ii) new evidence; or (iii) a determination that the prior ruling was clearly erroneous and manifestly unjust. Only the third ground is plausibly applicable. But as Relevant's substantive argument illustrates, the court's decision denying summary judgment was neither clearly erroneous nor manifestly unjust—far from it, the court got it right the first time.

## ARGUMENT

## THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT TO DEFENDANTS SHOULD BE VACATED.

### I. This Court Should Reject Defendants' Alternative Bases to Affirm.

#### A. Sham Litigation May Give Rise to Civil RICO Liability.

This Court should decline Defendants' invitation to affirm on the alternative ground that sham litigation can never amount to a predicate act for civil RICO liability. (*See* Doc. 37, Brief of Nourmand and Sunset Landmark LLC ("Nourmand Br.") at 35–40.) In so arguing, Defendants misplace their reliance on *United States v. Koziol*, 993 F.3d 1160 (9th Cir. 2021). Although the defendant there urged this Court to vacate his Hobbs Act criminal conviction on the ground that threatening sham litigation—which was the essence of his misconduct—could never trigger

3

Hobbs Act liability, this Court rejected that argument. It instead held: "there is no statutory, constitutional, or policy basis to exclude categorically threats of sham litigation from liability under the Hobbs Act." *Id.* at 1187; *see also* 18 U.S.C. § 1951(b) (defining extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right").

Despite that holding, Defendants seize on *Koziol*'s reference to holdings from other circuits that litigation activity alone cannot sustain a civil RICO claim. But Defendants obscure why *Koziol* addressed those decisions. This Court was not endorsing those decisions, but was rather distinguishing them, as it concluded that they were not squarely relevant to the issue presented: whether litigation activity could constitute wrongful conduct under the Hobbs Act. *Id.* at 1174–75. Thus, this Court "reject[ed] Koziol's argument that these cases from other circuits establish that threats of sham litigation cannot constitute extortion under the Hobbs Act." *Id.*

Several of those decisions held, under particular case facts, that the plaintiffs had failed to plead any predicate acts of extortion, Hobbs Act or otherwise—not that Hobbs Act extortion is defined differently in the RICO context. *See, e.g.*, *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 266-67 (8th Cir. 1984); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th

4

Cir. 2004). Other of those decisions did not even purport to interpret the Hobbs Act extortion provision. *See, e.g.*, *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (addressing mail-fraud, wire-fraud, and obstruction-of-justice predicate acts under RICO); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524 (5th Cir. 2016) (addressing obstruction-of-justice and witness-tampering predicate acts under RICO). The decisions are thus inapplicable here.

And while some the decisions stand for the proposition that sham litigation "without more" cannot constitute a RICO predicate act (*see, e.g.*, *Kim*, 833 F.3d at 104), here, there is more. Defendants did not only bring a weak case. Defendants used sham lawsuits, which they purportedly brought on behalf of the public, as a tool of private enrichment—*i.e.*, to obtain property to which they had "no lawful claim" and thereby pursue an "unlawful end." *See Koziol*, 993 F.3d at 1170. That additional element—the unlawful end—distinguishes this case from the other circuit cases. Allowing a civil RICO claim to proceed under these circumstances will not mean that "every unsuccessful lawsuit could spawn a retaliatory action" or "inundate the federal courts" with RICO claims. *Cf. Kim*, 884 F.3d at 104. Rather, it will deter sham public interest litigation that is intended only to acquire personal benefit, money, or property to which the petitioner has no lawful claim. That sort of abuse of the legal process as a tool for private enrichment "deserves all the chilling effect

the law allows." *Koziol*, 993 F.3d at 1174 (quoting *Rickards v. Canine Eye Reg. Found.*, 783 F.2d 1329, 1334 (9th Cir. 1986)).

Now that this Court has issued *Koziol*, that decision militates for holding here that sham litigation activity can constitute the predicate act of extortion, or attempted extortion, for civil RICO liability. After all, if sham litigation activity can constitute extortion (or attempted extortion) under the Hobbs Act, there is no sensible reason why that same activity should not be deemed to constitute a predicate act for civil RICO liability. The RICO statute "defines 'racketeering activity' to include 'any act which is indictable under' the Hobbs Act." *Wilkie v. Robbins*, 551 U.S. 537, 563 (2007) (quoting 18 U.S.C. § 1961(1)(A)-(B)).

Because *Koziol* holds that sham litigation activity is indictable under the Hobbs Act, and because any act indictable under the Hobbs Act can constitute a predicate act under RICO, sham litigation activity can constitute a predicate act under RICO. Given *Koziol*, that is, this Court is not writing on a blank slate, and this circuit's law cannot accommodate a *per se* rule excluding all sham litigation activity from the ambit of liability-conferring conduct under RICO.

This reading of *Koziol* finds support in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985). There, the Supreme Court eschewed the notion that policy considerations should drive disparate readings of the criminal and civil RICO provisions. Section 1962 lists prohibited acts; section 1963 lists criminal penalties

for a "violation" of section 1962; and section 1964 lists civil remedies for a "violation" of section 1962. *See* 18 U.S.C. §§ 1962–64. The lower courts in *Sedima* had interpreted section 1964, the civil provision, to impose pleading requirements that section 1963, the criminal provision, did not impose—*i.e.*, requirements to plead that the defendant had been convicted of a predicate act, and that the plaintiff had suffered a racketeering injury. 473 U.S. at 481. In particular, the lower courts had been concerned with "misuse of civil RICO by private plaintiffs," and the "consequences of an unbridled reading of the statute." *Id.* But the Supreme Court reversed, refusing to "infer that Congress intended the term"—"violations"—"to have wholly different meanings in neighboring subsections," one criminal and the other civil. *Id.* at 489. The Court thus held that "[i]f the defendant engages in a pattern of racketeering activity in a manner forbidden by [section 1962], and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under [section 1964]." *Id.* at 495. Extending the Court's reasoning here, if sham litigation activity is Hobbs Act extortion and thereby constitutes a predicate act under section 1962, then a plaintiff victimized by a pattern of such activity has a civil RICO claim under section 1964—and a supposed policy concern about the scope of civil liability should not alter the analysis. Put differently, no language in section 1964 enables the courts—on policy grounds—to pick and choose which crimes listed in section 1962 confer liability under section 1964.

7

Defendants' absolute rule would also contravene congressional intent. Congress's "express admonition that RICO is to be 'liberally construed to effectuate its remedial purposes'" is "nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Sedima*, 473 U.S. at 498 (citation omitted). The Supreme Court has "repeatedly refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 660 (2008); *see also Boyle v. United States*, 556 U.S. 938, 950 (2009) (emphasizing "the clear but expansive text of the statute."); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249 (1989) ("RICO may be a poorly drafted statute; but rewriting it is a job for Congress, if it is so inclined, and not for this Court."). As this Court has observed before: "We take from these cases the general instruction that we should not read the statutory terms of RICO narrowly. Rather, as the [Supreme] Court wrote in *Sedima*, 'RICO is to be read broadly.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (quoting *Sedima*, 473 U.S. at 497).

Nor are Defendants correct that, without a categorical rule prohibiting sham litigation activity from amounting to a predicate act under civil RICO, the specter of civil RICO liability will chill access to the courts. As this Court explained in *Sosa*, it is not just any litigation activity that can amount to predicate extortion under civil RICO. Rather, the litigation activity must be a sham and must fall outside the *Noerr-*

*Pennington* doctrine. 437 F.3d at 939–40. The *Noerr-Pennington* doctrine itself supplies the purportedly missing limiting principles. Meanwhile, the circuit decisions that have endorsed this categorical rule have failed to consider the impact of their holdings on criminal RICO liability or the Hobbs Act.

At bottom, *Koziol* supports Relevant's position—not Defendants'. *Koziol* and this case involve "the wrongful use of fear." *See* 993 F.3d at 1167. And *Koziol* rejected the notion that, "by filing his threatened sham complaint, Koziol could have automatically prevented the government from proving improper motive. Indeed, extortionists are not free simply to file a complaint and thus don the protective mantle of *Noerr-Pennington* immunity," *see id.* 1172 n.12. The fear here was all the greater because Defendants proved willing to file and prosecute sham petitions.

The district court was correct that sham litigation activity can serve as a predicate act for civil RICO liability. (1-ER-18.) That conclusion should not be disturbed, and this Court should not affirm on this alternative basis.

## B. Relevant Has Adduced Evidence on Enough Predicate Acts.

Equally unavailing is Defendants' argument that this Court should affirm on the alternative ground that Relevant cannot establish enough predicate acts to show a pattern of racketeering activity under RICO. (*See* Doc. 35, Brief of Nourmand & Associates ("Nourmand & Assocs. Br.") at 40–46.) A "pattern of racketeering activity" requires at least two predicate acts" that are "related" and "amount to or

9

pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 241–43 (1989). Relevant has adduced adequate summary-judgment evidence to establish four predicate acts.

The extortion related to the Thompson and Tommie projects constituted two separate predicate acts. Predicate acts "are determined by reference to the applicable statute." *United States v. Boffa*, 688 F.2d 919, 934–36 (3d Cir. 1982) (citing *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218 (1952)). Defendants wrongfully threatened to delay the Thompson project if Relevant did not hand over money and other concessions. (7-ER-1380 ¶¶ 53–57, 1385 ¶¶ 77–79.) Then, and separately, Defendants threatened to delay the Tommie project, and they demanded additional money and design changes to end that separate challenge. (7-ER-1382 ¶¶ 64–66, 1385–86 ¶¶ 79–84.) Under the Hobbs Act, these acts constitute distinct "wrongful" threats to delay each project and distinct demands for "property" from each entity. That the vehicles used to obtain that property—the settlement agreements—were executed on the same day is of no moment. There were two separate lawsuits. (7-ER-1374 ¶ 36, 1383 ¶ 71.) There were two separate settlement agreements. (7-ER-1386 ¶ 83.) And Defendants made separate settlement demands for each project: $4 million for the Thompson; $1.5 million for the Tommie. (7-ER-1385–86 ¶¶ 79-84.) (*See also* Relevant Br. at 8–18.)

The third predicate act is Defendants' attempted extortion concerning the Selma project. Nourmand made an express demand for money: "you know the drill, it's going to take a check." (7-ER-1387–88 ¶¶ 94–96.) That statement is an "external manifestation" of an intent to commit extortion. *See, e.g.*, *United States v. Villalobos*, 748 F.3d 953, 957–58 (9th Cir. 2014) (holding that lawyer attempted extortion by threatening that his client's cooperation with or obstruction of an investigation would turn on whether the victim paid him). Relevant's refusal to accede to the shakedown cannot avail Defendants. *See Koziol*, 993 F.3d at 1167 (holding that the "wrongful use of fear" violates the Hobbs Act). Overall, a reasonable jury could readily conclude from Nourmand's statement, from Defendants' prior acts of extortion, and from Defendants' continued abuse of the CEQA process that Defendants had attempted extortion. *See United States v. Soto-Barraza*, 947 F.3d 1111, 1120 (9th Cir. 2020) (holding that actions ripen into attempt when "a defendant's actions demonstrate 'that the crime will take place unless interrupted by independent circumstances.'") (citation omitted). (*See also* Relevant Br. at 18–20.)

A jury could also find attempted extortion concerning the Schrader project. Defendants brought their challenges to the Schrader project in the aftermath of Defendants having extorted $5.5 million from the Tommie and Thompson projects, and Nourmand having explained that the "drill" for Relevant going forward would be writing Defendants a check whenever Relevant wished to build a new project.

Although Relevant eventually withdrew from the Schrader project, Defendants filed sham legal challenges to disrupt Relevant's development of the project *before* Relevant's withdrawal. The meeting between KOAR Institutional Advisors ("KOAR") and Defendants reinforces the attempted extortion: Defendants' voluntarily dismissed their sham legal challenges only after KOAR represented that Relevant was no longer associated with the project. A reasonable jury could find, under those circumstances, that Defendants had attempted extortion concerning the Schrader project. (*See* Relevant Br. at 21–23.)

Nor has Relevant waived its right to assert that Defendants' conduct concerning the Schrader project was a predicate act under RICO. Relevant has consistently maintained that the Schrader conduct was an act of attempted extortion and a separate predicate act. (*See* Dist. Ct. Doc. 89 ¶¶ 16, 99–103; Doc. 104 at 4-5; Doc. 181 at 8-9; Doc. 285 at 12–13.) Although Defendants take, out of context, a single line from an early brief urging that the Schrader episode is best understood not as an isolated act but rather alongside Defendants' prior pattern of racketeering activity (*see* Nourmand & Assocs. Br. at 45 (citing Doc. 137 at 25)), Defendants have not argued—and could not credibly argue—that judicial estoppel should apply. *See United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (observing that judicial estoppel should not apply absent proof that party obtained unfair advantage).

The district court was correct that Relevant had adduced adequate summary-judgment evidence on four predicate acts, which is enough for a RICO pattern. (1-ER-14.) That conclusion should not be disturbed, and this Court should not affirm on the alternative basis that the district court was wrong.

## II. The District Court Erred by Misapplying the *Noerr-Pennington* Doctrine and Granting Summary Judgment to Defendants on a Flawed Basis.

### A. The Court Erroneously Declined to Apply the Series Exception to the *Noerr-Pennington* Doctrine.

The district court's grant of summary judgment to Defendants is predicated on the flawed premise that the *PREI* (or "objectively-baseless") exception to the *Noerr-Pennington* doctrine, rather than the *USS-POSCO* (or "series") exception, governs here. The court reached that incorrect premise by conflating (i) the number of predicate acts for RICO purposes with (ii) the number of administrative and judicial proceedings for *Noerr-Pennington* purposes. Under the *PREI* exception, a defendant loses the protection when it files an objectively baseless proceeding with an unlawful motive. *See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993) ("*PREI*")). Under the *USS-POSCO* exception, a defendant loses the protection when it files a series of proceedings without regard to their merits and for an unlawful purpose. *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council*, 31 F.3d 800, 811 (9th Cir. 1994). The district court should have applied the series exception. (*See* Relevant Br. at 35–37.)

On appeal, Defendants do not meaningfully defend the district court's conceptual confusion—except to argue, based on *Boulware*, that "this Court has equated predicate acts with sham petitions before." (*See* Nourmand Br. 46.) But Defendants misread the case. This Court observed that, under *Omni*, "courts frequently have approached sham claims by attempting to assess the objective legal merit of the predicate suit." *Boulware v. State of Nev., Dep't of Hum. Res.*, 960 F.2d 793, 797 (9th Cir. 1992) (citing *Omni Resource Dev. Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1413 (9th Cir. 1984)). So, *Boulware* was using "predicate" merely to reference the underlying litigation that a court is evaluating under the *Noerr-Pennington* doctrine—not to reference anything related to civil RICO liability. Neither in *Boulware* nor elsewhere has this Court equated predicate acts and sham petitions.

Defendants are also utterly incorrect in contending that "[t]here is no such thing as a 'sham' request for official action by a non-judicial body." (*See* Nourmand & Assocs. Br. at 31.) Administrative challenges can count as sham petitions. In *California Motor*, the Supreme Court held that the *Noerr-Pennington* doctrine should not apply where, as here, "a pattern of baseless, repetitive claims" leads "the factfinder to conclude that *the administrative* and judicial processes have been abused." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972) (emphasis added). There, a group of highway carriers sought to deter a competitor from obtaining operating licenses through a pattern of challenges that

"extended to rehearings and to reviews or appeals from *agency* or court decisions." *Id.* at 513 (emphasis added). It is undeniable that the Supreme Court counted pre-litigation challenges during administrative proceedings, as well as judicial challenges, in its analysis. *See id.*

Courts routinely apply the serial-sham exception to petitions filed against non-judicial bodies. *See, e.g.*, *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 182 (3d Cir. 2015) (counting challenges to state agencies); *Waugh Chapel S., LLC v. United Food & Com. Workers Union Local 27*, 728 F.3d 354, 357 (4th Cir. 2013) (counting challenge to city council); *see also Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 534 (9th Cir. 1991) ("The repeated filing of baseless claims without regard to their merits may indicate that the judicial and administrative processes have been abused."). This approach harmonizes with the purpose of the series-exception to *Noerr-Pennington*. Where, as here, a party has a policy of repeatedly and reflexively using government machinery—including administrative processes—to impose cost and delay rather than to legitimately obtain government action, such sham petitioning activity does not warrant First Amendment protection from liability. As *Allied Tube* put it: "Of course, *in whatever forum*, private action that is not genuinely aimed at procuring favorable government action is a mere sham that cannot be deemed a valid effort to influence government action." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n.4 (1988) (emphasis added).

This Court's decision in *Kottle* is instructive. *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998). There, this Court held that the sham exception applies to "adjudicatory" administrative bodies—that is, agencies that are similar to judicial bodies insofar as "their actions are guided by enforceable standards subject to review"—but not to administrative bodies that do not at all resemble courts. 146 F.3d at 1062. This Court further held that the administrative proceedings at issue were in fact adjudicatory, citing "many indicia of a true adjudicatory proceeding," such as: "conduct[ing] public hearings," "accept[ing] written and oral arguments," "permit[ting] representation by counsel," "issu[ing] written findings after its hearings," decisions that are appealable, and an "appeal" that is "governed by" "procedures" and "standards." *Id.* at 1062. Those same indicia are present here. (*See* 7-ER-1367–66 ¶¶ 14–17, 1369 ¶ 20, 1372–73 ¶¶ 28–30, 1374 ¶¶ 34–36, 1375–76 ¶¶ 40–43, 1392–93 ¶¶ 118–122.)

Although Defendants argue that, when counting petitions under the series-exception, all their administrative activities related to CEQA should merge with their subsequent judicial challenges (*see* Nourmand & Assocs. Br. at 32), that contention conflicts with the Supreme Court's reasoning in *California Motor*. There, the Court included among the "activities" at issue "rehearings" and "reviews or appeals from agency or court decisions." 404 U.S. at 509. Those subsequent steps followed initial steps—yet the Court did not construe all the proceedings as one sprawling challenge.

Moreover, Defendants' merger argument fails because several of Defendants' challenges are unrelated to CEQA. For example, in May 2016, Defendants filed a separate administrative proceeding against the Thompson project, this time with the Community Redevelopment Agency of Los Angeles. (7-ER-1375–76 ¶ 40.) Defendants opposed an owner-participation agreement between Relevant and the Agency and urged that the Agency could not "lawfully approve" the agreement based on the same meritless arguments that Defendants had advanced during the entitlement process—*i.e.*, the arguments that the City could not amend a purportedly "permanent" floor-area-ratio limitation and that noise from the project's "massive outdoor party space" rendered the mitigated negative declaration invalid. (7-ER-1375–76 ¶ 40; 2-ER-350–57; 3-ER-512–21.) This challenge was rejected. (7-ER-1374 ¶ 34.) Separately, in early August 2016, Defendants filed another administrative proceeding, this time with the Los Angeles Department of Building Safety, arguing that the Department had "no lawful basis" to process permits and that the Department was obligated to revoke an already issued demolition permit. (7-ER-1377 ¶ 41; 4-ER-559, 771.) Yet when Defendants lodged this challenge, Relevant had already completed the authorized razing work—meaning that Defendants sought to invalidate a demolition permit for a demolished building. (7-ER-1376 ¶ 41.) The Department denied the challenge. (7-ER-1376 ¶ 42.) Then, in October 2016, Defendants filed an administrative proceeding with the Los Angeles

Director of Planning, arguing that the Department of Building Safety had erred—but the Director denied that challenge. (7-ER-1376–77 ¶ 43.) And then, in February 2017, Defendants filed an administrative proceeding with the Central Los Angeles Area Planning Commission, arguing that the Director had erred. (7-ER-1376–77 ¶ 43.) The Commission denied that challenge in a report that criticized Defendants' objection. (7-ER-1376–77 ¶ 43.) In May 2017, Defendants' counsel appeared again before the Commission to appeal the Commission's denial. The Commission affirmed. (7-ER-1376–77 ¶ 43; 4-ER-762, 764, 766, 771–73.)

None of the above petitioning activities relate to the CEQA process. Defendants engaged in these separate activities only to pull additional levers in the government machinery and further burden Relevant by forcing it to fight Defendants' lawfare on multiple fronts. Relevant not only had to resist Defendants' sham administrative and judicial challenges related to CEQA, but Relevant also had to resist Defendants' sham challenges related to various non-CEQA permitting, licensing, and administrative processes. The foregoing facts—which comprise only a snippet of Defendants' sham activities regarding the Thompson project alone, much less Defendants' sham activities overall—illustrate why it does not make sense to count Defendants' conduct concerning each hotel project as one sham petition.

Nor are Defendants correct that their letter to prosecutors should not count as sham petitioning activity. (*See* Nourmand & Assocs. Br. at 32.) While Defendants

attempt to disclaim any responsibility for this petition, Relevant has adduced summary-judgment evidence that Defendants' counsel, Robert Silverstein's law firm, drafted a letter to local, state, and federal prosecutors, requesting that the prosecutors investigate the City's approvals of Relevant projects in Hollywood. (7-ER-1396 ¶ 123.) The letter contained unsubstantiated allegations and the requested investigation was not opened. (7-ER-1396 ¶ 123.) And this letter, too, has nothing to do with the CEQA process. Therefore, the district court erred in failing to count this correspondence as a separate instance of sham petitioning activity. *See Villalobos*, 748 F.3d at 957 (holding that an offer to assist in a criminal investigation was extortionate petitioning activity); *Harman v. Valley Nat'l Bank*, 339 F.2d 564, 566 (9th Cir. 1964) (applying sham exception to activity directed at state attorney general). At a minimum, Relevant has presented a genuine dispute of material fact on whether the letter should count as a distinct sham petition in the series.

Defendants heavily rely on the Seventh Circuit's decision in *U.S. Futures* to support their suggestion that all the petitioning activities for the four hotel projects should count as one petition per hotel (*see* Nourmand Br. at 51; Nourmand & Assocs. Br. at 24, 31, 37)—but Defendants neglect to mention that the Seventh Circuit split from this Court and does not recognize this Court's series inquiry under *USS-POSCO*: "We do not agree *California Motor* provides a separate rubric to use whenever a 'pattern' of sham filings is alleged." *U.S. Futures Exch., L.L.C. v. Bd. of*

*Trade of the City of Chicago, Inc.*, 953 F.3d 955, 964 (7th Cir. 2020). Defendants also neglect to mention that, although the Seventh Circuit observed in dicta that it would not find a "series" even under *USS-POSCO*, the court was evaluating a "single legislative proceeding" within which the defendants made "multiple efforts" to "influence" the Commodity Futures Trading Commission's decision on "one overarching issue": "whether to approve" the stock-exchange service provider's registration application for a new exchange. *Id.* at 965. And the court distinguished, from the case before it, a case like ours, where Defendants have brought multiple petitions across various "fronts." *See id.* In sum, *U.S. Futures* is wholly inapposite, and Defendants' reliance on it correspondingly weakens their own argument.

More fundamentally, Relevant maintains that the district court, in its second summary-judgment decision, was incorrect to reduce the series-exception to a mere counting exercise. The touchstone is the volume of sham litigation activity—regardless of how parties or judges might slice up that activity. Rather than elevating form over substance, this Court should take a "holistic" approach and hold that Defendants' repeated and reflexive petitioning activity triggers the series exception. *See Waugh Chapel*, 728 F.3d at 364; *Hanover*, 806 F.3d at 182.

Reducing the inquiry to a counting exercise would gloss over all the various tactics, big and small, that Defendants employed to overwhelm Relevant with legal process. To take just one example, in March 2015, Nourmand instructed N&A

employees to attend a public hearing for the Thompson project, in order to present a false appearance of widespread community opposition. (7-ER-1372 ¶ 28.) N&A management circulated his directive to employees, stating that Nourmand "just wants some bodies there." (7-ER-1372 ¶ 28; 2-ER-366–68, 369–71.) Several N&A employees attended the hearing at Nourmand's direction and signed a petition stating that the Thompson project would negatively impact "our largely residential street"—even though none of those employees lived in Hollywood, and only a few worked from the Hollywood office. (7-ER-1372–73 ¶¶ 29–30; 2-ER-393, 366–68, 369–71, 372–74, 375–77.) A pure counting inquiry would bury such facts.

This case involves a sprawling, years-long campaign comprising dozens of administrative proceedings and multiple lawsuits. In each of these proceedings, Defendants did everything they could to drown Relevant in legal process. Defendants asserted scattershot claims and filed massive, boilerplate objections running into the hundreds of pages. When an extortioner declares "you know the drill," and announces that it will always "find something else to challenge," the relevant threat is the burden that attends the series of challenges, not the potential outcome of an isolated petition or petitions. The series exception should apply.

**B.      Under the Series Exception to *Noerr-Pennington*, Triable Fact Issues Preclude Summary Judgment.**

Under the *USS-POSCO* exception, Relevant adduced ample evidence for a reasonable jury to conclude that Defendants sought to extract property from

Relevant through governmental process without regard to that process's outcome—thus precluding summary judgment for Defendants on *Noerr-Pennington* grounds.

For one, Defendants have no counter to Relevant's evidence that they have no genuine interest in environmental issues, but are rather competitors with Relevant in the Hollywood real-estate development space. Nourmand has never been involved in environmental causes. (7-ER-1372 ¶ 27.) He stated that he opposed the Thompson project because he did not want other projects to proceed on the same block where he intended to develop his Sunset Property one day. (7-ER-1372 ¶ 27.) He stated that he did not want a project to proceed with restaurant- or bar-uses that would compete with properties in which he had an ownership interest: the Boulevard3, a raucous nightclub, and the Hollywood Athletic Club. (7-ER-1372 ¶ 27; 2-ER-137; 2-ER-139; 2-ER-362.) Defendants also tried develop their own property and ignored larger developments with greater impact. (7-ER-1371 ¶ 25, 1371 ¶ 27, 1396 ¶ 132.)

Nor can Defendants counter Relevant's evidence that they repeatedly and reflexively filed boilerplate, pretextual, and baseless legal objections to the four hotel projects. Defendants argue that they were required to file repetitive petitions because CEQA requires repeated filings "upon pain of waiver" (*see* Nourmand Br. at 50)—but Defendants entirely miss the point: Defendants filed copycat objections not only within the same project, but from one project to the next. Many submissions approached several hundred pages, and Defendants merely copied and pasted the

same form objections without regard for differences between the projects. (7-ER-1379 ¶¶ 50–51, 1381 ¶ 58, 1387 ¶¶ 90–92, 1390 ¶¶ 105–107, 1392–93 ¶¶ 120–122, 7-ER-1562.) Defendants challenged the Thompson project before seeing the environmental study that they claimed was inadequate (7-ER-1369 ¶¶ 19–20, 1390 ¶¶ 105–107; 1485 ¶ 95; 2-ER-186–89, 190–194; 6-ER-1098), and they filed objection regarding a demolition permit for a building that had already been demolished (7-ER-1375–77 ¶¶ 40–43; 4-ER-558, 766).

After Defendants' administrative objections failed, they sued in court using the same approach. (*See* Relevant Br. at 42–43.) And in settlement, Defendants demanded concessions to benefit their business interests—not environmental causes. This strategy included securing agreement from Relevant to forgo CEQA challenges to Defendants' developments. (7-ER-1371–72 ¶ 26, 1386 ¶ 83; 2-ER-140–69; 5-ER-1032–70.) Defendants did not ask for further environmental review, or for Relevant to address the environmental objections that Defendants had advanced. (7-ER-1371–72 ¶ 26, 1386 ¶ 83.) When Relevant offered to complete an environmental impact report ("EIR") for the Thompson project—the relief purportedly sought in the Thompson CEQA litigation—Defendants made clear that they would challenge, sight unseen, any EIR too. As Defendants' attorney put it, he could always "find something else to challenge." (7-ER-1382 ¶¶ 64–65, 1407 ¶ 9, 1401 ¶ 8.)

Defendants claim that they "only challenged three of (at least) six projects Relevant was developing" nearby, as if that concession assisted them. (*See* Nourmand Br. at 44.) One project (the remodeling of the Citizen News building) avoided a challenge only because Defendants missed the filing deadline and could not find a stalking horse to bring the challenge for them. (7-ER-1395–96 ¶ 130.) Another project (the Morrison) is outside of Hollywood in downtown Los Angeles, so Defendants could not challenge it. (7-ER-1366 ¶ 8, 1392 ¶ 120.) Yet another (the Dream hotel complex, including the Tao restaurant) was a project that Relevant began developing in 2007 and that had gone through the government approval process before Defendants learned about Relevant's projects and before Defendants began their campaign of extortion. (7-ER-1478 ¶ 65, 1489 ¶ 120.)

Relevant does not—as Defendants imply—need to show that every argument in every suit was "objectively baseless." (*See* Nourmand Br. at 53.) As *USS-POSCO* made clear, the "occasional success" of a sham lawsuit is "irrelevant": even a stopped clock is right twice a day. 31 F.3d at 811; *see also PREI*, 508 U.S. at 73 (Stevens, J., concurring) ("Repetitive filings, some of which are successful and some unsuccessful, may support an inference that the process is being misused.").

In any event, Defendants did not win any of their CEQA suits or administrative challenges. They withdrew the overwhelming majority of their claims and lost the overwhelming majority of the rest. After losing the Selma litigation in

the Superior Court, they appealed and lost again. The victories that they claim are trivial and pyrrhic—limited remands for clarification that are not "wins." The mitigated negative declarations were never set aside. No project approval was ever invalidated. (*See* Relevant Br. at 45–51.)

Based on this record, Relevant's CEQA expert concluded that Defendants' legal challenges were objectively baseless and contained the hallmarks of CEQA abuse. (7-ER-1539–41.) Under *USS-POSCO*, a triable issue of fact plainly exists. The parties vigorously dispute the significance of Defendants' claimed victories, and there is ample evidence that Defendants abused the legal process to acquire property and concessions that Defendants could never have acquired as a legitimate legal outcome. Defendants' self-serving assertions about their motivations are arguments for the jury, not for summary judgment.

## C. Even Under the Objectively-Baseless Exception, Summary Judgment Should Have Been Denied.

In arguing that the inapplicable *PREI* test compels summary judgment in their favor, Defendants mischaracterize Relevant's burden. Its burden is not to prove a negative or to conclusively demonstrate that the claims were meritless; rather, its burden is to come forward with sufficient evidence to raise a triable issue, which Relevant has done. *See Giles v. GMAC*, 494 F.3d 865, 872 (9th Cir. 2007) ("the issue of material fact … is not required to be resolved conclusively in favor of the party asserting its existence"). Further, although Relevant gave in to the extortion and

settled, the settlements are not conclusive evidence of merit that would justify taking the issue away from a jury. (*See* Relevant Br. at 51–52.)

## III. The District Court Exceeded Its Authority in Sua Sponte Overruling the Court's Prior Summary Judgment Order.

The district court erred in granting summary judgment to Defendants because the court abused its discretion in *sua sponte* overruling itself. The court had denied Defendants' *Noerr-Pennington* defense, holding that the series exception applied, three times: twice at the pleading stage and once at the summary-judgment stage. The court set the case for trial. But the case was then transferred from Judge Wright II to Chief Judge Gutierrez, and six days before trial, the court stayed trial and ordered new briefing. The court then reversed itself and granted summary judgment to Defendants on *Noerr-Pennington* grounds. (*See* Relevant Br. at 24–28 (describing procedural background).) Yet under the law-of-the-case doctrine—or its underlying principles—one judge may reverse a critical holding rendered by a prior judge in the same case only if (i) the intervening law has changed, (ii) new evidence has emerged, or (iii) the prior holding was clearly erroneous and would generate manifest injustice. *See Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1096 (9th Cir. 1994). None of those three triggering conditions was met here.

Defendants ignore *Peralta*, a recent and *en banc* decision from this Court confirming that a district court may not reverse itself without adequate justification. *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (holding that district court

properly granted judgment as a matter of law to defendants after trial, after denying them summary judgment, because fact dispute "disappeared" as the "record develop[ed] during trial"). Defendants instead seek refuge (*see* Nourmand Br. at 70; Nourmand & Assocs. Br. at 51) in *Castner v. First National Bank of Anchorage*, 278 F.2d 376 (9th Cir. 1960). But that decision stands for the proposition that "one judge may set aside or reverse a prior order made by a colleague" only when "cogent reasons appear" or "exceptional circumstances exist." *Id.* at 380 (citations omitted). Since *Castner* was issued in 1960, this Court has expounded those cogent and exceptional grounds: (i) a change in the intervening law, (ii) the emergence of new evidence, or (iii) a clearly erroneous prior holding that would generate manifest injustice. *See, e.g.*, *Pit River Home*, 30 F.3d at 1097 (applying the law-of-the-case doctrine to an interlocutory order); *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1027 (9th Cir. 2001) (same). So, *Castner* does not compel any particular result here, and this Court should reject Defendants' hyperbolic and credibility-draining suggestion that *Castner* is directly controlling and directly adverse to Relevant.

Defendants do not suggest that either of the first two grounds applies. On the third ground, this Court should follow persuasive authority from the Fourth Circuit:

> A prior decision does not qualify for this third exception by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong.

*TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (citations and punctuation omitted); *accord United States v. Hendrix*, 673 F. App'x 850, 854 (10th Cir. 2016). This definition of "clear error" is consistent with the definition of the term in other contexts. *See Glossip v. Gross*, 576 U.S. 863, 881 (2015) (holding, as to the "deferential clear-error standard" for appellate review: "This standard does not entitle us to overturn a finding simply because we are convinced that we would have decided the case differently.") (citation and punctuation omitted); *McDowell v. Calderon*, 197 F.3d 1253, 1255–56 (9th Cir. 1999) (holding, as to the clear-error standard for Fed. R. Civ. P. 59(e): "The question being a debatable one, the district court did not commit clear error."); *In re Mersho*, 6 F.4th 891, 898 (9th Cir. 2021) (holding, as to the clear-error standard for issuing a writ of mandamus under the All Writs Act, that the reviewing court must be left with a "definite and firm conviction that a mistake has been committed": "A ruling usually cannot be clearly erroneous if there is no Ninth Circuit authority on point, or the question has not been addressed by any circuit court.") (citations and punctuation omitted).

Here, Relevant's substantive argument shows that the district court could not have *clearly* erred in denying summary judgment to Defendants. Nor may Judge Gutierrez's subjective beliefs satisfy the standard. This Court should independently inquire whether the district court was clearly wrong the first time—and because the

district court was not, the district court abused its discretion in *sua sponte* reversing the denial of summary judgment on the ground of clear error.

Defendants' failure to challenge the first summary-judgment decision further evidences the lack of any clear error that would work a manifest injustice. If they were suffering from a manifest injustice, and if they could identify a clear error, they presumably would have challenged the first ruling. But they did not file a motion for reconsideration. They did not seek an interlocutory appeal.

Defendants also fail to explain how the summary-judgment *denial* could have caused a manifest injustice or threatened their core constitutional rights. Denying them summary judgment and setting the case for trial did not deprive them of any rights or hold them liable on any claims; the function of the trial is to determine their rights and liabilities. That trial should now go forward.

## CONCLUSION

The district court's grant of summary judgment for Defendants should be vacated and the case should be remanded for trial. Alternatively, the grant of summary judgment should be vacated and the case should be remanded for reconsideration of summary judgment under the *USS-POSCO* standard.

Dated: March 11, 2024

KASOWITZ BENSON TORRES LLP

By: /s/ Jennifer S. Recine

Jennifer S. Recine
Amit R. Vora
Donald J. Reinhard
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile:  (212) 506-1800
JRecine@kasowitz.com

*Attorneys for Appellants
Relevant Group, LLC, 1541 Wilcox
Hotel, LLC, 6516 Tommie Hotel, LLC,
and 6421 Selma Wilcox Hotel, LLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7) and Circuit Rule 32-1, I hereby certify that this brief contains 6,987 words and was prepared in a proportionately spaced 14-point font typeface using Microsoft Word 2013. The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6).

Dated: March 11, 2024

KASOWITZ BENSON TORRES LLP

*/s/ Jennifer S. Recine*
Jennifer S. Recine

*Counsel for Appellants Relevant Group, LLC, 1541 Wilcox Hotel, LLC, 6516 Tommie Hotel, LLC, and 6421 Selma Wilcox Hotel, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: March 11, 2024

KASOWITZ BENSON TORRES LLP

*/s/ Jennifer S. Recine*
Jennifer S. Recine

*Counsel for Appellants Relevant Group, LLC, 1541 Wilcox Hotel, LLC, 6516 Tommie Hotel, LLC, and 6421 Selma Wilcox Hotel, LLC*